Chief Magistrate Judge Brian A. Tsuchida

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. MJ20-336 |
| Plaintiff, | |
| v. | GOVERNMENT'S MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION |
| MARGARET AISLINN CHANNON, | |
| Defendant. | |

## Introduction

On June 10, 2020, Margaret Channon was arrested pursuant to a Criminal Complaint charging her with five counts of Arson.  On June 11, 2020, Channon made her initial appearance.  Magistrate Judge McCandlis entered a detention order after Channon stipulated to pretrial detention.  Channon now requests that this Court release her to live with her mother in West Seattle.

For all of the reasons set forth below, the government respectfully submits that the Court should maintain the detention order in this case; there is no combination of conditions that would reasonably assure Channon's presence at future court proceedings and ensure the safety of the community.  As detailed below, each of the statutory factors weighs in favor of pretrial detention in this case.

Government's Memorandum in Support of Motion for Detention - 1
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**A. The Nature and Circumstances of the Offenses.**

    **1. Channon's Violent Rampage through Downtown Seattle.**

    The offenses Channon committed were violent and dangerous.  As described in the Complaint, Channon deliberately torched five Seattle Police Department ("SPD") vehicles that were parked in downtown Seattle for purposes of conducting crowd control during the protests-turned-riots on May 30, 2020.  Channon went from police vehicle to police vehicle, using a flame and aerosol can to set fires inside of, and ultimately destroy, the SPD vehicles.  In between the vehicle arsons, Channon engaged in the destructive looting of multiple businesses in downtown Seattle.

    Channon was one of a relatively small number of people who hijacked the otherwise lawful protests and created a scene of chaotic civil disorder.  The following exchange between three Twitter users adeptly summarizes the role Channon ("that one woman") played in instigating and fueling the violent rioting in Seattle:

ohisuppose 125 points · 5 days ago
Holy shit. That one woman changed the narrative of the protests in Seattle. Seeing the cop cars in fire opened so many doors for looting.

EatMoreMeatYaWaif 31 points · 5 days ago
They weren't just giving you free reign to destroy shit without consequences. This v

gaviidae 59 points · 5 days ago
Don't feel bad for her. She was there to destroy stuff not to protest

Reply  Share  •••

    Channon's rampage was documented in videos and photographs taken by the media, police officers, and numerous bystanders.  *Exhibit 1* contains representative examples of photographs and video stills depicting Channon's conduct, as described below:

- "The Arsons": Pages 1 and 2 contain photographs of Channon torching the SPD vehicles.  Pages 3 and 4 show the utter destruction Channon caused in downtown Seattle – police cars in flames and smoke billowing throughout the downtown corridor.

Government's Memorandum in Support of Motion for Detention - 2
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- "The Destruction": Pages 5 and 6 contain images of the victim SPD vehicles after the arsons.  Channon literally burned the vehicles down to their frames.

- "The Looting": Page 7 contains three images of Channon looting the Old Navy store in Seattle.  The top image shows Channon climbing over debris and entering the store through smashed windows.  The middle image is taken from a surveillance video inside of Old Navy.  The video captured Channon destroying the interior of the store and throwing large quantities of merchandise onto the sidewalk for other looters to steal.  The bottom image shows Channon leaving the Old Navy store carrying a stolen shirt that she later burned and placed (flaming) inside one of the SPD vehicles.

- "The Looting" (continued): Page 8 shows additional images of Channon looting and destroying businesses in Seattle.  The image on the left depicts Channon damaging the façade of the Verizon Wireless store by smashing it repeatedly with an object in her hand.  The red-toned images on the right are taken from a surveillance camera inside of the Jimmy Johns store.  Channon ransacked the interior of the store by, among other things, smashing a cash register on the ground and breaking other items in the store.

## 2.  Channon's Violent Conduct was Planned and Deliberately Carried Out.

One notable aspect of Channon's violent rampage – and something that speaks loudly regarding her future dangerousness – is that it was premeditated, planned, and deliberately carried out.  Channon is not someone who innocently arrived at the protests planning to engage in non-violent freedom of expression, and who then unexpectedly got caught-up in an emotional moment and lost control.  Instead, Channon very clearly planned the arsons, and she arrived in Seattle ready and equipped to carry them out.

We know this for several reasons.  First, Channon brought with her to the protests a lighter and an aerosol can, and she was obviously well practiced in how to use them together as a blowtorch.  There is no other plausible reason why Channon brought those items to the protests, other than as part of her plan to commit arsons.

Channon's deliberateness during the arsons also evidences a planned, careful approach.  Channon moved calmly from car to car, often returning to cars that were not sufficiently flaming to add to the damage.

Government's Memorandum in Support of Motion for Detention - 3
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       Moreover, one of the items recovered by agents from the desk in Channon's

2   bedroom confirms that the arsons were premeditated.  Specifically, Channon had a hand-

3   written drawing of the Fremont Troll throwing a police car into a fire, while a rat roasted

4   a marshmallow over the flame.  *Exhibit 1*, pages 10-11 ("The Drawing").  This drawing

5   was dated February 29, 2020, a full three months prior to the arsons, and it had

6   Channon's first name of "Margaret" written directly over the troll.  *Exhibit 1*, page 10.  It

7   is not a coincidence that Channon reenacted this scene in downtown Seattle on May 30.

8       **3.  Evidence that Channon was Planning Additional Acts of Violence.**

9       Channon's conduct during the days after the arsons makes clear that she was

10  planning to engage in further acts of violence targeting police officers.  During the first

11  week of June, Channon used her smartphone to conduct several concerning internet

12  searches; agents recovered evidence of these searches on Channon's phone pursuant to

13  the execution of a federal search warrant.  Specifically, Channon conducted the following

14  searches:

15  - On June 6, 2020, one week after the arsons, Channon ran several searches
16    researching how to use and purchase various explosive materials.  For
17    example, Channon searched for "what is a blasting cap" and "buy blasting
      caps," and reviewed multiple PDF documents about using blasting cap
18    explosives.

19  - On June 6, 2020, Channon ran searches related to the explosive compound
20    ANFO.  ANFO also was specifically referenced in some of the PDF
      documents Channon reviewed over her smartphone on June 6.  According
21    to FBI agents, ANFO is a secondary explosive made from ammonium
      nitrate and fuel oil.  ANFO is manufactured commercially for blasting and
22    mining, but is also a common homemade explosive due to its simplicity.  A
      secondary explosive such as ANFO is typically used alongside a more
23    sensitive primary explosive such as the ones used in blasting caps.
24

25  - On June 1, 2020, Channon ran numerous searches trying to find personal
26    identifying information about SPD Officer J.C.  This officer incorrectly had
      been identified over social media as the officer who allegedly used pepper
27    spray against a minor female in Seattle on May 29, 2020.  As a result, on
      May 29-30, 2020, there were numerous calls over social media encouraging
28

Government's Memorandum in Support of Motion for Detention - 4
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

retaliation against Officer J.C.  Channon appears to have been attempting to locate the officer by running various searches including "how to find a police officer online," "find a police officer's address by badge number," and by searching for the officer's name in the White Pages, for which Channon is a paid subscriber.

All of this evidence makes clear that Channon went to Seattle on May 30, 2020, with a premeditated plan to commit the arsons.  Thereafter, she began planning additional acts of violence against police officers and possibly others, contemplating the use of explosive devices.  Channon did not lose control at the protests in the heat of the moment – she went there intending to hijack the protests for her own violent purposes.  And, she succeeded in doing so.

**B. The Weight of the Evidence.**

Although it is the least-weighted factor, the strength of the evidence is one of the statutory factors the court must consider as part of the pretrial detention analysis.  In this case, the strength of the evidence against Channon weighs in favor of detention.

Although the evidence summarized in the Complaint was already strong, the case has grown significantly stronger since the filing of the Complaint.  At the time of the Complaint, the primary issue in the case was that of identity – *i.e.,* the proof that Channon was, in fact, the arsonist on May 30, 2020.  However, based on evidence acquired after Channon's arrest, there is no longer a serious question about the government's ability to prove that Channon was the arsonist.

As described in the Complaint, and as depicted in various photographs and videos (some of which are included in *Exhibit 1*), the arsonist on May 30 wore several distinctive items of clothing, including: a striped scarf; mismatched green and pink patterned socks; black shoes with a brown sole and distinctive gold eyelets; and a black t-shirt with a distinctive grey pattern on the front.  In addition, the arsonist had several distinctive tattoos, including a large tattoo on her right shoulder and "W-A-I-F" tattooed on the fingers of her left hand.

Government's Memorandum in Support of Motion for Detention - 5
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    During the search of Channon's bedroom on June 10, 2020, agents found all of the
2  distinctive articles of clothing worn by the arsonist – the striped scarf, mismatched socks,
3  black/brown shoes, and the patterned black t-shirt.  Agents seized all of these items and
4  photographed them (*see Exhibit 1*, page 9 ("The Search")), along with the
5  aforementioned drawing of the Freemont Troll throwing a police car into a fire.
6  Moreover, Channon had all of the same distinctive tattoos on her body as the arsonist,
7  including the large tattoo on her right shoulder and "W-A-I-F" on the fingers of her left
8  hand.  *Exhibit 1*, page 12 ("The Tattoos") (comparing photos of the arsonist on the left,
9  with post-arrest photos of Channon on the right).  There is no remaining question that
10  Channon was the arsonist on May 30, 2020.

11  **C. Channon's History and Characteristics.**

12    Several aspects of Channon's history and characteristics weigh heavily in favor of
13  pretrial detention.

14  **1.  Channon's Prior Police Contacts.**

15    Over the past several years, Channon has been the subject of numerous concerning
16  police contacts taking place in several distant states.  These police contacts are
17  summarized in *Exhibit 2*, based on a review of relevant police reports and court records.
18  Taken together, these police contacts establish that Channon has been a transient and
19  troubled individual over the past several years.  For example, Channon has multiple
20  arrests and failures to appear in Baltimore, Maryland, during 2016 and 2017, including
21  one incident when she threw a bike at a police officer and attempted to flee.  Channon has
22  another arrest in Nebraska in 2018, during which she was found in possession of
23  hallucinogens.  She was also the subject of a missing person report in Texas in early
24  2019.[1]

25    Closer to home, and more recently, Channon has been the subject of additional
26  concerning police reports.  According to a Tacoma Police Department ("TPD") report, on

27
28  ---
[1] Also in 2019, Channon was arrested for shoplifting at the Uwajimaya store in Seattle.
Government's Memorandum in Support of Motion for Detention - 6
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

March 6, 2020, one of Channon's roommates called the police and reported that Channon and another roommate were "high on meth and getting violent." By the time police officers responded to the scene, Channon and the other roommate had left the house. The complainant told the officers "she was very concerned for her safety as [Channon and the other roommate] were growing violent and unstable due to continuous meth use - and she wanted them out of her house." On March 14, 2020, TPD officers were at the house for another reason. The officers asked the complainant about the March 6 incident, and the complainant "affirmed [] that the other roommates, and their guests (to include CHANNON), were still causing issues and using meth daily."[2]

## 2. Channon's Prior Rioting Activities.

Channon also has a history of organizing and participating in riots in response to politically controversial events. This recently came to light when, after seeing national media coverage about Channon's arrest in Seattle, a detective for the Washington, D.C. Metropolitan Police Department ("MPD") contacted federal law enforcement regarding an investigation that the MPD conducted of Channon in January 2017. Specifically, Channon was the subject of an investigation for her role in organizing and participating in rioting in Washington, D.C. on Inauguration Day 2017, in conjunction with protests over President Trump's inauguration. According to the detective, MPD officers observed Channon acting as a "lookout" during the riots; in this capacity, Channon rode a bicycle and used a communication radio to keep other rioters apprised of the location of police officers who were attempting to conduct crowd control. In addition, the detective stated that the MPD acquired video footage of Channon participating in meetings about the organization and planning of the rioting activity.[3] Although Channon was not charged

---

2 The complainant in this police report wrote one of the letters of support submitted by the defendant as part of Exhibit D to the Memorandum in Support of Release (Doc. 19). Notably, the information the complainant provided to the TPD officers is inconsistent with the substance of the letter she provided to the court.
3 At this time, the government does not have additional information about Channon's role in the Inauguration Day rioting. The MPD detective is in the process of sending all of the investigative materials to the Seattle FBI Office for further review.

Government's Memorandum in Support of Motion for Detention - 7
*U.S. v. Margaret Aislinn Channon*; MJ20-336

with any crimes related to the riots in Washington, D.C., her documented participation in organizing the riots three years prior to the arsons she committed in this case is a concerning aspect of her history and a troubling indicator of her future dangerousness.

**3.  Additional Aspects of Channon's Background.**

Other aspects of Channon's background and characteristics also weigh in favor of pretrial detention.  First, Channon appears to have substance abuse issues.  For example, based on the above-referenced TPD report, there is reason for the court to be concerned that Channon is a regular user of methamphetamine.  Moreover, agents observed evidence on Channon's smartphone indicating that she is a regular user of marijuana.

Second, Channon has relatively limited ties to the local community.  Although she has lived in the Seattle area for the past year or so, her numerous police contacts in states as far flung as Maryland, Texas, and Nebraska reveal that she has moved around extensively over the past few years, and that trouble has followed her wherever she's gone.  Moreover, Channon does not appear to have stable employment in the local area, and her driver's license is revoked/suspended, according to the USPO report.  Indeed, Channon's only meaningful tie to the local community appears to be that her mother lives here.

**D.  The Nature and Seriousness of Danger to the Community Posed by Release.**

Channon's release from custody would pose a serious danger to the community – especially in light of the current social and political climate.  Channon's history makes clear that events related to political and/or social unrest (*i.e.,* BLM protests or presidential inaugurations), are triggers for her to engage in violent outbursts.  As the Court well knows, we are now living in a time of continued social and political tension involving a multitude of issues, including the BLM protests, COVID-19 related issues, and a burgeoning presidential election cycle.  Channon's premediated arsons on May 30, 2020, her subsequent internet research regarding obtaining explosive devices and searching for the personal information of a targeted police officer, as well as her past rioting in

Government's Memorandum in Support of Motion for Detention - 8
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington, D.C., all demonstrate that Channon's release would pose a real and serious danger to the community – especially at the present time.

**E. Channon Presents a Serious Risk of Flight.**

Channon faces a lengthy jail term if convicted of the current charges – and likely a much longer jail term based on additional charges that may be included in an upcoming indictment. These significant penalties substantially increase the risk of flight in this case, especially when viewed in light of Channon's relatively limited ties to this District and her history of transience and troubling police contacts around the country.

In the Complaint, Channon is charged with five counts of Arson, in violation of Title 18, United States Code, Sections 844(f)(1) and 844(i). Each of these counts carries a 5-year mandatory minimum sentence, with a maximum sentence of 20 years in prison.

The government is scheduled to present an indictment to the grand jury in this matter in mid-August. The indictment will likely contain additional charges against Channon that will result in substantially longer mandatory minimum sentences. For example, the government may seek to include the following additional offenses in the indictment:

- Obstructing Law Enforcement Officers During a Civil Disorder, in violation of Title 18, United States Code, Section 231(a)(3); and

- Use of Fire to Commit Another Felony Offense, in violation of Title 18, United States Code, Section 844(h)(1).

Section 844(h) carries a 10-year mandatory minimum sentence that must be served consecutively to "any other term of imprisonment," including the punishment for the underlying felony offense. 18 U.S.C. § 844(h). Therefore, Channon may face a total mandatory minimum sentence of 15 years if convicted of all potential charges. These substantial penalties increase the likelihood that Channon would seek to flee and fail to appear at future court proceedings.

Government's Memorandum in Support of Motion for Detention - 9
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Conclusion**

    For all of the foregoing reasons, the government respectfully requests that the Court maintain the Detention Order previously entered in this matter.

    DATED this 13th day of July, 2020.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*s/ Todd Greenberg*
TODD GREENBERG
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-3903
Facsimile: 206-553-4440
Phone: 206-553-7970
E-mail: Todd.Greenberg4@usdoj.gov

Government's Memorandum in Support of Motion for Detention - 10
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

*s/ Courtney Goertzen*
COURTNEY GOERTZEN
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
E-mail: Courtney.Goertzen@usdoj.gov

Government's Memorandum in Support of Motion for Detention - 11
*U.S. v. Margaret Aislinn Channon*; MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970