UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARGARET AISLINN CHANNON,<br><br>Defendant. | NO. MJ20-336<br><br>**GOVERNMENT'S MOTION FOR REVIEW AND REVOCATION OF RELEASE ORDER** |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Todd Greenberg, Assistant United States Attorney for said District, hereby files this motion for the Court to review and revoke the release order entered in this matter by Magistrate Judge Brian A. Tsuchida. For the reasons set forth below, the government respectfully submits that the defendant, Margaret Channon, should be detained pending trial because she is both a danger to the community and a flight risk.

//
//
//

Motion for Review and Revocation of Release Order - 1
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I.   BACKGROUND

### A.   The Charges and Offense Conduct.

Channon is charged by Complaint with five counts of Arson, relating to her burning of five Seattle Police Department vehicles in downtown Seattle on May 30, 2020. The facts of Channon's offense conduct are detailed in the Complaint affidavit, as well as in this memorandum and accompanying exhibits.

### B.   Procedural History.

Channon was arrested on June 10, 2020, a few hours after the Complaint was filed. The following day, on June 11, 2020, Channon made her initial appearance. Magistrate Judge McCandlis entered a detention order after Channon stipulated to pretrial detention. Channon moved for the reopening of the detention hearing, and Magistrate Judge Tsuchida conducted a detention review hearing on July 15, 2020. After the hearing, Judge Tsuchida adopted the recommendation of the U.S. Probation Office and held that Channon would be released on an appearance bond containing several conditions. Judge Tsuchida stayed Channon's release pending the resolution of the instant government appeal.

## II.   LEGAL STANDARD

An appeal of a magistrate's order of release is governed by 18 U.S.C. § 3145(a), which provides:

> If a person is ordered released by a magistrate judge, . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendments of the conditions of release[.]

The district court reviews the magistrate judge's detention order *de novo* and "make[s] its own independent determination whether the magistrate's findings are correct, *with no deference*." United States v. Koenig, 912 F.2d 1190, 1192-93 (9th Cir. 1990) (emphasis added). *See id.* ("[T]he ultimate determination of the propriety of detention is [] to be decided *without deference* to the magistrate's ultimate conclusion.") (emphasis added).

Motion for Review and Revocation of Release Order - 2
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

To perform this function, the district court is permitted to hold additional evidentiary hearings, "and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate." *Id.* at 1193.

In ruling on a motion for pretrial detention, the Court must determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required, and the safety of any other person and the community. 18 U.S.C. § 3142(f). The Bail Reform Act provides that a court should detain a defendant pending trial if "no condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

The United States bears the burden of showing that the defendant poses a danger to the community by clear and convincing evidence, and that a defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991). The government may present evidence by way of evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g. United States v. Salerno*, 481 U.S. 739, 743 (1987); *United States v. Winsor*, 785 F.2d 757 (9th Cir. 1986).

The Bail Reform Act identifies four factors that a court should consider in analyzing a detention motion: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including [] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Motion for Review and Revocation of Release Order - 3
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## III. REVIEW OF THE DETENTION FACTORS

For the reasons set forth below, the government submits that each of the statutory factors listed in § 3142(g) weighs in favor of pretrial detention in this case. There is no combination of conditions that will reasonably ensure Channon's presence at future court proceedings or the safety the community. Therefore, a pretrial detention order is necessary and appropriate in this case.

**A. The Nature and Circumstances of the Offenses.**

**1. Channon's Violent Rampage through Downtown Seattle.**

The offenses Channon committed were violent and dangerous. As described in the Complaint, Channon deliberately torched Seattle Police Department ("SPD") vehicles that were parked in downtown Seattle for purposes of conducting crowd control during the protests-turned-riots on May 30, 2020. Channon went from police vehicle to police vehicle, using a flame and aerosol can to set fires inside of, and ultimately destroy, the SPD vehicles. In between the vehicle arsons, Channon engaged in destructive looting of multiple businesses in downtown Seattle.

Channon was one of a relatively small number of people who hijacked the otherwise lawful protests and created a scene of chaotic civil disorder. She played a key role in instigating and fueling the violent rioting in downtown Seattle on May 30, 2020. Channon's rampage was documented in videos and photographs taken by the media, police officers, and numerous bystanders. *Exhibit 1* contains representative examples of photographs and video stills depicting Channon's conduct, as described below:

- "The Arsons": Pages 1 and 2 contain photographs of Channon torching the SPD vehicles. Pages 3 and 4 show the utter destruction Channon caused in downtown Seattle – police cars in flames and smoke billowing throughout the downtown corridor.

- "The Destruction": Pages 5 and 6 contain images of the victim SPD vehicles after the arsons. Channon literally burned the vehicles down to their frames.

- "The Looting": Page 7 contains three images of Channon looting the Old Navy store in Seattle. The top image shows Channon climbing over debris and

Motion for Review and Revocation of Release Order - 4
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- entering the store through smashed windows. The middle image is taken from a surveillance video inside of Old Navy. The video captured Channon destroying the interior of the store and throwing large quantities of merchandise onto the sidewalk for other looters to steal. The bottom image shows Channon leaving the Old Navy store carrying a stolen shirt that she later burned and placed (flaming) inside one of the SPD vehicles.

- "The Looting" (continued): Page 8 shows additional images of Channon looting and destroying businesses in Seattle. The image on the left depicts Channon damaging the façade of the Verizon Wireless store by smashing it repeatedly with an object in her hand. The red-toned images on the right are taken from a surveillance camera inside of the Jimmy Johns store. Channon ransacked the interior of the store by, among other things, smashing a cash register on the ground and breaking other items in the store.

**2. Channon's Violent Conduct was Planned and Deliberately Carried Out.**

One notable aspect of Channon's violent rampage – and something that speaks loudly regarding her future dangerousness – is that it was premediated, planned, and deliberately carried out. Channon is not someone who innocently arrived at the protests planning to engage in non-violent freedom of expression, and who then unexpectedly got caught-up in an emotional moment and lost control. Instead, Channon planned the arsons and arrived in Seattle ready and equipped to carry them out.

We know this for several reasons. First, Channon brought with her to the protests a lighter and an aerosol can, and she was well practiced in how to use them together as a blowtorch. There is no plausible reason why Channon brought these items to the protests, other than as part of her plan to commit arsons.

Channon's deliberateness during the arsons also evidences a planned, careful approach. Channon moved calmly from car to car, often returning to cars that were not sufficiently flaming to add to the damage.

Moreover, one of the items recovered by agents from the desk in Channon's bedroom further suggests that the arsons were premeditated. Specifically, Channon had a hand-written drawing of the Fremont Troll throwing a police car into a fire, while a rat roasted a marshmallow over the flame. *Exhibit 1*, pages 10-11 ("The Drawing"). This

Motion for Review and Revocation of Release Order - 5
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

drawing was dated February 29, 2020 – three months prior to the arsons – and it had Channon's first name of "Margaret" written directly over the troll. *Exhibit 1*, page 10. It is not a coincidence that Channon reenacted this scene in downtown Seattle on May 30.

### 3. Evidence that Channon was Planning Additional Acts of Violence.

Channon's conduct during the days after the arsons raises serious concerns that she was planning to engage in further acts of violence targeting police officers. During the first week of June, Channon used her smartphone to conduct several concerning internet searches; agents recovered evidence of these searches on Channon's phone pursuant to the execution of a federal search warrant. Specifically, Channon conducted the following searches:

- On June 6, 2020, one week after the arsons, Channon ran several searches researching how to use and purchase various explosive materials. For example, Channon searched for "what is a blasting cap" and "buy blasting caps," and reviewed multiple PDF documents about using blasting cap explosives.

- On June 6, 2020, Channon ran searches related to the explosive compound ANFO. ANFO also was specifically referenced in some of the PDF documents Channon reviewed over her smartphone on June 6. According to FBI agents, ANFO is a secondary explosive made from ammonium nitrate and fuel oil. ANFO is manufactured commercially for blasting and mining, but is also a common homemade explosive due to its simplicity. A secondary explosive such as ANFO is typically used alongside a more sensitive primary explosive such as the ones used in blasting caps.

- On June 1, 2020, Channon ran numerous searches trying to find personal identifying information about SPD Officer J.C. This officer incorrectly had been identified over social media as the officer who allegedly used pepper spray against a minor female in Seattle on May 29, 2020. As a result, on May 29-30, 2020, there were numerous calls over social media encouraging retaliation against Officer J.C. Channon appears to have been attempting to locate the officer by running various searches including "how to find a police officer online," "find a police officer's address by badge number," and by searching for the officer's name in the White Pages, for which Channon is a paid subscriber.

Motion for Review and Revocation of Release Order - 6
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    All of this evidence makes clear that Channon went to Seattle on May 30, 2020,
2  with a premeditated plan to commit the arsons.  Thereafter, she began researching the use
3  and acquisition of explosive materials, apparently in furtherance of planning additional
4  acts of violence against police officers and possibly others.  Channon did not lose control
5  at the protests in the heat of the moment – she went there intending to hijack the protests
6  for her own violent purposes.  And, she succeeded in doing so.

7    **B. The Weight of the Evidence.**

8    In this case, the strength of the evidence against Channon weighs in favor of
9  detention.  Although the evidence summarized in the Complaint was already strong, the
10 case has grown significantly stronger since the filing of the Complaint.  At the time of the
11 Complaint, the primary issue in the case was that of identity – *i.e.,* the proof that Channon
12 was, in fact, the arsonist on May 30, 2020.  However, based on evidence acquired after
13 Channon's arrest, there is no longer a serious question about the government's ability to
14 prove that Channon was the arsonist.

15   As described in the Complaint, and as depicted in various photographs and videos
16 (some of which are included in *Exhibit 1*), the arsonist on May 30 wore several
17 distinctive items of clothing, including: a striped scarf; mismatched green and pink
18 patterned socks; black shoes with a brown sole and distinctive gold eyelets; and a black t-
19 shirt with a distinctive grey pattern on the front.  In addition, the arsonist had several
20 distinctive tattoos, including a large tattoo on her right shoulder and "W-A-I-F" tattooed
21 on the fingers of her left hand.

22   During the search of Channon's bedroom on June 10, 2020, agents found all of the
23 distinctive articles of clothing worn by the arsonist – the striped scarf, mismatched socks,
24 black/brown shoes, and the patterned black t-shirt.  Agents seized all of these items and
25 photographed them (*see Exhibit 1*, page 9 ("The Search")), along with the
26 aforementioned drawing of the Freemont Troll throwing a police car into a fire.
27 Moreover, Channon had all of the same distinctive tattoos on her body as the arsonist,
28 including the large tattoo on her right shoulder and "W-A-I-F" on the fingers of her left

Motion for Review and Revocation of Release Order - 7
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

hand.  *Exhibit 1*, page 12 ("The Tattoos") (comparing photos of the arsonist on the left, with post-arrest photos of Channon on the right).  There is no remaining question that Channon was the arsonist on May 30, 2020.

**C. Channon's History and Characteristics.**

Several aspects of Channon's history and characteristics weigh heavily in favor of pretrial detention.

**1. Channon's Prior Police Contacts.**

Over the past several years, Channon has been the subject of numerous concerning police contacts taking place in several far-flung states.  These police contacts are summarized in *Exhibit 2*, based on a review of relevant police reports and court records.  Taken together, these police contacts establish that trouble has followed Channon as she has traveled from state to state.  For example, Channon has multiple arrests and failures to appear in Baltimore, Maryland, during 2016 and 2017, including one incident when she threw a bike at a police officer and attempted to flee.  Channon has another arrest in Nebraska in 2018, during which she was found in possession of hallucinogens.  In February and March 2019, Channon was the subject of a disturbing missing person report in Brewster County, Texas; Channon went missing for a full month, only to turn up in the country of Belize.

Closer to home, and more recently, Channon has been the subject of additional concerning police reports.  According to a Tacoma Police Department ("TPD") report, on March 6, 2020, one of Channon's roommates called the police and reported that Channon and another roommate were "high on meth and getting violent."  By the time police officers responded to the scene, Channon and the other roommate had left the house.  The complainant told the officers "she was very concerned for her safety as [Channon and the other roommate] were growing violent and unstable due to continuous meth use - and she wanted them out of her house."  On March 14, 2020, TPD officers were at the house for another reason.  The officers asked the complainant about the March 6 incident, and the

Motion for Review and Revocation of Release Order - 8
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

complainant "affirmed [] that the other roommates, and their guests (to include CHANNON), were still causing issues and using meth daily."[1]

### 2. Channon's Prior Rioting Activities.

Channon also has a history of organizing and participating in riots in response to politically controversial events. This recently came to light when, after seeing national media coverage about Channon's arrest in Seattle, a detective for the Washington, D.C. Metropolitan Police Department ("MPD") contacted federal law enforcement regarding an investigation that the MPD conducted of Channon in January 2017. Specifically, Channon was the subject of an investigation for her role in organizing and participating in rioting in Washington, D.C. on Inauguration Day 2017, in conjunction with protests over President Trump's inauguration. According to the detective, MPD officers observed Channon acting as a "lookout" during the riots; in this capacity, Channon rode a bicycle and used a communication radio to keep other rioters apprised of the location of police officers who were attempting to conduct crowd control. In addition, the detective stated that the MPD acquired video footage of Channon participating in meetings about the organization and planning of the rioting activity.[2] Although Channon was not charged with any crimes related to the riots in Washington, D.C., her documented involvement in this prior activity is a concerning aspect of her history and an indicator of her future dangerousness.

### 3. Additional Aspects of Channon's Background.

Several other aspects of Channon's background and characteristics also weigh in favor of pretrial detention.

- Channon has relatively limited ties to the local community. For example, she has lived in Washington State for only the last year. Prior to that, she

---

[1] The complainant in this police report wrote one of the letters of support submitted by the defendant as part of Exhibit D to the Memorandum in Support of Release (Doc. 19). Notably, the information the complainant provided to the TPD officers is inconsistent with the substance of the letter she provided to the court.

[2] At this time, the government does not have additional information about Channon's role in the Inauguration Day rioting. The MPD detective is in the process of sending all of the investigative materials to the Seattle FBI Office for further review.

Motion for Review and Revocation of Release Order - 9
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    moved from state to state, as reflected in her police contacts. Channon does not have any current employment in the local area, nor does she attend any local schools. Although she has been intermittently employed through the years, and has plans to look for a job if released, there is nothing of an ongoing nature that is rooting her in our community. In sum, it would be very easy for Channon to pick up and leave the area.

- Based on the U.S. Probation report, Channon appears to have serious mental health issues. These issues may have been a contributing factor to Channon's violent rampage in Seattle on May 30, 2020.

- Channon also has substance abuse issues. Based on the above-referenced TPD report, there is reason for the Court to be concerned that Channon is a user of methamphetamine. Moreover, based on the Probation Office report, Channon appears to have issues with alcohol and marijuana consumption.

**D. The Nature and Seriousness of Danger to the Community Posed by Release.**

    Channon's release from custody would pose a serious danger to the community – especially in light of the current social and political climate. Channon's history makes clear that events related to political and/or social unrest (*i.e.,* BLM protests or presidential inaugurations), are triggers for her to engage in violence. As the Court well knows, we are now living in a time of continued social and political tension involving a multitude of issues, including the BLM protests, COVID-19 related issues, and a burgeoning presidential election cycle. Channon's release into this environment would pose a real and serious danger to the community.

//
//
//

Motion for Review and Revocation of Release Order - 10
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### E. Channon Presents a Serious Risk of Flight.

The record contains substantial evidence that Channon is a serious risk of flight. Channon will face a lengthy jail term if convicted of the current charges. In the Complaint, Channon is charged with five counts of Arson, in violation of Title 18, United States Code, Sections 844(f)(1) and 844(i). Each of these counts carries a 5-year mandatory minimum sentence, with a maximum sentence of 20 years in prison. The government is scheduled to present an indictment to the grand jury in this matter in mid-August. The indictment likely will contain additional charges against Channon that would increase the applicable mandatory minimum sentences, such as *Obstructing Law Enforcement Officers During a Civil Disorder*, in violation of Title 18, United States Code, Section 231(a)(3); and *Use of Fire to Commit Another Felony Offense*, in violation of Title 18, United States Code, Section 844(h)(1). Section 844(h) carries a 10-year mandatory minimum sentence that must be served *consecutively* to "any other term of imprisonment," including the punishment for the underlying felony offense. 18 U.S.C. § 844(h). Therefore, Channon may face a total mandatory minimum sentence of 15 years if convicted of all potential charges. These penalties substantially increase the risk of flight in this case, especially when viewed in light of Channon's relatively limited ties to this District.

The record contains additional evidence that establishes Channon is a serious risk of flight in this case:

- As reflected in the Probation Office report, over the past few years, Channon has traveled extensively throughout the United States and also abroad.

- Channon told the Probation Office that she took a trip to Mexico "but declined to discuss the details of this trip." USPO Report at 2. This should raise a red flag for the Court, especially in light of the facts that: (a) U.S. Customs & Border Protection has no record of Channon traveling to or from Mexico; and (b) Channon did not have a valid U.S. passport between the years of 2012 and 2019. Therefore, if she indeed took this mysterious

Motion for Review and Revocation of Release Order - 11
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

trip to Mexico, it appears she travelled illegally under a different name and/or by other unlawful means.

- The Probation Office report documents that Channon has been arrested for Failure to Appear, and/or has actually failed to appear at court hearings, on six prior occasions.

- Channon's mother's offer to serve as a "third party custodian" should not give this Court sufficient comfort in terms of fully mitigating the risks of Channon's release. Although it is common for parents not to know all of the details of their adult child's life, Channon's mother told the Probation Office that she was unaware of some important details that bear on the detention analysis. For example, Channon's mother was unaware that Channon had been hospitalized for mental health concerns. USPO Report at 4. Channon's mother also was unaware that Channon had travelled to Mexico under concerning circumstances. USPO Report at 2.

## IV.   CONCLUSION

For all of the foregoing reasons, the government respectfully submits that the Court should revoke the release order in this case. The government has met its burden of establishing that no combination of conditions would reasonably ensure Channon's presence at future court proceedings or the safety the community.

Although the government appreciates Magistrate Judge Tsuchida's efforts to include a list of conditions in Channon's Appearance Bond in an attempt to mitigate against the risks of release, these conditions simply are not adequate. Certain defendants are too dangerous, volatile, and unreliable to be released pursuant to any conditions. Channon's offense conduct and personal history establish that she is one of those defendants.[3]

---

[3] Channon submitted to the Magistrate Judge a list of cases from other judicial districts in which courts have entered release orders for defendants charged with crimes arising out of various recent protests/riots. *See* Exhibit A to Defendants Memorandum in Support of Release (Doc. 19). This sort of comparative analysis is meaningless in the context of the instant case. As this Court well knows, the pretrial detention analysis is an individualized one that is unique to the facts and defendant presented in every case. This analysis necessarily reflects the offense conduct and the characteristics and history of each individual defendant. The fact that Channon can point to some cases in which defendants have been released – or that the government could point to a long list of cases in which similarly situated defendants were detained – has no bearing here.

Motion for Review and Revocation of Release Order - 12
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A pretrial detention order is necessary and appropriate in this case.

DATED this 15th day of July, 2020.

          Respectfully submitted,

          BRIAN T. MORAN
          United States Attorney

          *s/ Todd Greenberg*
          TODD GREENBERG
          Assistant United States Attorney
          United States Attorney's Office
          700 Stewart, Suite 5220
          Seattle, Washington  98101
          Phone: (206) 553-7970
          Fax: (206) 553-0755
          E-mail: Todd.Greenberg4@usdoj.gov

Motion for Review and Revocation of Release Order - 13
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

    *s/ Courtney Goertzen*
COURTNEY GOERTZEN
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax: 206-553-0755
E-mail: Courtney.Goertzen@usdoj.gov

Motion for Review and Revocation of Release Order - 14
*United States v. Channon,* MJ20-336

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970